IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL LEBOW AND CAROL LEBOW <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY | CIVIL ACTION NO. 2:24-cv-02200 <br><br><br> JURY TRIAL DEMANDED |

**MEMORANDUM OPINION**

Before this Court are two motions by Defendant State Farm Fire and Casualty Company ("Defendant"). The first is Defendant's *Daubert* Motion to Exclude Expert Evidence on Causation from Mike Owens (the "*Daubert* Motion"). (Dkt. #37). The Second is Defendant's Motion for Partial Summary Judgment (the "Motion for Summary Judgment"). (Dkt. #38). For the reasons explained below, both motions are denied.

**I.      Factual Background[1]**

This case was filed by Michael and Carol Lebow ("Plaintiffs") in the Bucks County Court of Common Pleas and removed to this Court on May 23, 2024. (Dkt. #1 at Ex. A). Plaintiffs allege that on April 1, 2023, their home at 893 Princess Drive, Yardley, Pennsylvania (the "Property") suffered sudden and accidental physical loss resulting from hail. (Dkt. #15 at ¶¶6, 8, #38-3 at ¶ 4). At the time of the incident, the Property was insured by Defendant pursuant to a homeowner's insurance policy. (Dkt. #38 at Ex. C, the "Policy"). Plaintiffs submitted several affidavits which support their claim that the damage was caused by hail.

Plaintiffs allege that on July 7, 2023, they discovered the hail damage when alerted to it by

---

[1]      Because the Court writes primarily for the parties to this litigation, the Court will not exhaustively detail the factual allegations, but rather will only discuss those necessary for resolution of these motions.

1

a roofer who provided photographs of the damage. (Dkt. #15 at Ex. B). On July 24, 2023, Plaintiffs reported the damage to Defendant. (Dkt. #38-3 at ¶ 5). On August 2, 2023, Defendant sent out an adjustor who concluded that the damage was damage unrelated to hail. (*Id.* at ¶¶ 6-7).

On November 15, 2023, Mike Owens, an adjustor hired by Plaintiffs (and the subject of the instant *Daubert* Motion), supplied to Defendant a repair estimate with accompanying photos. (Dkt. #38 at Ex. H). The cover email from Mr. Owens notes that he observed "significant hail damage." *Id.* On December 14, 2023, Defendant assigned Claim Specialist Luis Del Valle to conduct an additional inspection of the Property. (Dkt. #38-3 at ¶ 11). Mr. Del Valle concluded the damage was caused by normal wear and tear and not covered. (*Id.* at ¶ 13).

On February 7, 2024, Defendant denied coverage. (Dkt. #38 at Ex. K, the "Denial Letter"). In the Denial Letter, Defendant asserted that the damage identified was caused by "damages resulting from wear, tear, deterioration, **mechanical damage**, blisters, weathering, flaking, old damage unrelated to the date of the loss and the cause of the loss, lichen and moss." (*Id.*, emphasis added)) In that same letter, the provisions of the Policy cited to justify not covering the damage refer to "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or **mechanical breakdown**" as well as "wet or dry rot." (*Id.* (emphasis added)).

## II. The *Daubert* Motion

### a. The Parties' Arguments

In the *Daubert* Motion, Defendant seeks to preclude Mr. Owens from testifying as an expert witness on the issue of causation. In its motion, Defendant contradictorily contends that it both did and did not receive a C.V. for Mr. Owens. (Dkt. #37 at ¶¶ 7, 9).[2] Defendant also contends

---

[2] It is obvious that Defendant was, in fact, provided a C.V. for Mr. Owens, as Defendant attached that C.V. to their own *Daubert* Motion. (Dkt. #37 at Ex. E.). This Court presumes the erroneous contention was likely the innocent result of using a previous filing in another matter as a basis for this one. Using a previous filing as a starting point is often advisable and a wise use of

2

that Mr. Owens should be excluded because has not provided an expert report and the documents he has provided do not satisfy the disclosure requirements for an expert witness. (*Id.* at ¶ 17). Defendant finally contends that Mr. Owens's background and experience are not sufficient to qualify him as an expert in causation. (*Id.* at ¶¶ 18-20).

In opposition, Plaintiffs point to the cover email, photographs, and estimates provided by Mr. Owens as an adequate expert disclosure. They also point out that Mr. Owens was identified in interrogatory responses as someone who would give expert testimony that the damage was caused by a risk that is covered under the policy. Finally, Plaintiffs point to Mr. Owens's long experience in insurance adjusting and his personal inspection of the Property as qualifying him as an expert in this case.

### b. Legal Background

This Court serves as a gatekeeper for expert testimony to ensure the methodology used by an expert is sufficiently reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 732 (3d Cir. 1994). But *Daubert* and its progeny must be understood in the context of this Circuit's general policy towards liberally admitting relevant evidence. *Id.* at 742. While sometimes an expert witness needs a thick resume and impressive diploma, oftentimes practical experience is the best type of background for an expert witness. "((P)ractical experience as well as academic training and credentials may be the basis of qualification (as an expert witness)." *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982) (quoting *Moran v. Ford Motor Co.*, 476 F.2d 289, 291 (8th Cir. 1973)) (alterations in original).

Federal Rule of Civil Procedure 26(A)(2)(B) sets out very specific requirements for expert

---

client resources when drafting a motion. But had this particular contradiction not been so easy to resolve, this Court may have been inadvertently misled by Defendant's innocent error and falsely believed no C.V. was provided. The parties are reminded of their duty to carefully review their drafts for accuracy before filing.

3

witnesses who must provide an expert report. But those strenuous requirements only apply "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). Such a witness is often referred to as a "retained" expert witness. All other experts (referred to as "non-retained") need only disclose: 1) the subject matters on which they are expected to testify; and 2) a summary of the facts and opinions on which the expert will testify. Fed.R.Civ.P. 26(a)(2)(C). This rule is frequently used to allow treating doctors to testify without the necessity of a full expert report. See, e.g.: *Bird v. Borough of Moosic,* No. 3:18-CV-02289, 2022 WL 584072, at *5 (M.D. Pa. Feb. 25, 2022); *Hunter v. Kennedy*, No. 3:17-CV-00007, 2018 WL 6322909, at *3 (M.D. Pa. Dec. 4, 2018); *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, No. CV 12-1615, 2016 WL 5930868, at *2 (E.D. Pa. Oct. 12, 2016) (noting requirements under Rule 26(a)(2)(C) are "considerably less extensive than the report required by Rule 26(a)(2)(B)."). A non-retained expert under Rule 26(a)(2)(C) testifies on opinions reached based upon their personal observations, rather than through an analysis of all discovery on both sides, like a retained expert might. *Donaldson v. Lensbouer*, No. CV 3:15-63, 2017 WL 5634130, at *8 (W.D. Pa. Nov. 21, 2017).

### c. Analysis

#### i. Mr. Owens's Report Is Sufficient.

Here, this Court first deals with Mr. Owens's report. The report and documentation supplied by Mr. Owens and Plaintiffs would plainly fall short of what is required of a "retained expert" under Rule 26(a)(2)(B). But Mr. Owens was hired by Plaintiffs before this litigation commenced and for a purpose other than testifying. Further, this Court understands Mr. Owens's opinions to be based upon his own personal observations. As such, the requirements of Rule

4

26(A)(2)(B) do not apply to Mr. Owens, and this Court analyzes Mr. Owens's disclosure under Rule 26(a)(2)(C).

In accordance with Rule 26(a)(2)(C), all that Plaintiffs were required to disclose is the subject matter of his testimony and a summary of his facts and opinions. *Id.* As discussed *supra*, the subjects of his testimony were disclosed in Plaintiffs interrogatory responses. Additionally, a highly detailed explanation of Mr. Owens's opinions regarding the location and cause of the damage to the Property and how much it will cost to repair the damage was provided to Defendant before this litigation began. (Dkt. #38 at Ex. H).

At trial, this Court will entertain live objections if Mr. Owens's opinions are rooted in information beyond his own personal observation or if his opinions stray too far from the information already provided by Mr. Owens to Defendant. But Plaintiffs' disclosures, if perhaps a bit inartful, meet the much lower bar set forth under Rule 26(a)(2)(C). For that reason, Defendant's challenge to the sufficiency of Mr. Owens's report is denied.

### ii. **Mr. Owens's Qualifications**

Based on his extensive practical experience, Mr. Owens is qualified to testify regarding judgments he makes in the essential responsibilities of his day-to-day job. Mr. Owens will be permitted to testify about the damage he observed, whether it is consistent with normal wear-and-tear or aging, whether the damage is consistent with hail damage, and how much it will cost to repair or replace.[3] If Defendant believes that Mr. Owens's ability or qualifications to differentiate

---

[3] As to the specific subject of causation, Defendant curiously asserts that the *Daubert* Motion to exclude Mr. Owens's testimony on causation is "moot" because Plaintiff does not bear the burden of proving a specific cause of the damage to the siding and roof in the context of an "all risks" policy. This assertion strikes this Court an odd one. Mr. Owens's report and Plaintiffs own interrogatories seem to indicate that he is prepared to assert that the damage was caused by hail. Even if that initial burden belongs to Defendant, upon Defendant's introduction of its own experts (who will testify the damage was not caused by hail), presumably Plaintiff would like Mr. Owens to testify in rebuttal that the damage *was* caused by hail, and not by another excludable cause.

5

hail damage from other damage are suspect, such impeachment will be permitted through *voir dire* and cross examination. Upon consideration of the Third Circuit's liberal policy of admission, this Court finds that Mr. Owens is qualified to testify regarding causation. See *In re Paoli*, 35 F.3d at 742. For that reason, the *Daubert* motion is denied.

### III. The Summary Judgment Motion

#### a. The Parties' Arguments

Defendant also moves for partial summary judgment, asking this Court to dismiss Count II of the Amended Complaint, which states a claim for Bad Faith. In support of its motion, Defendant points to the high, objective standards of proof a plaintiff must meet to prove a bad faith claim, and its allegedly thorough investigation of the claims brought by Plaintiff. (Dkt. #38, generally). In their opposition, Plaintiffs again argue that the policy is an "all-risks" policy, which requires coverage for any loss not specifically excluded. (Dkt. #44-1 at 6). Plaintiff argues that Defendant in its briefing has failed to point to an exclusion which would permit Defendant to deny coverage under an all-risks policy for what its expert termed to be "mechanical damage." *Id.* Specifically, "mechanical damage" is not a basis for a denial in accordance with the Policy nor does the Defense expert's explanation of mechanical damage, as rocks being deflected or children playing, provide a basis for denial.

#### b. Legal Standards

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002).

---

Plaintiffs' opposition brief goes on to defend Mr. Owens's qualification to determine that the damage was caused by hail. This Court, therefore, finds that the motion is not moot, as all objective facts indicate that testimony about causation by Mr. Owens is likely to be presented by Plaintiffs.

6

This Court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005). That means this Court is not permitted to weigh the credibility of conflicting witnesses. *Savage v. Judge,* 644 F. Supp. 2d 550, 559 (E.D. Pa. 2009). That includes when conflicting experts create a "battle of the experts" as to a key fact of the case. *In re Asbestos Prods. Liab. Litig. (No. VI),* No. 09-70613, 2010 WL 3928658, at *3, n. 6 (E.D. Pa. June 10, 2010). Judicial notice may be utilized in resolving a motion for summary judgment. *Mid-S. Grizzlies v. Nat'l Football League,* 550 F. Supp. 558, 570, n. 31 (E.D. Pa. 1982).

To win a claim for bad faith, an insured must show by clear and convincing evidence "(1) that the insurer did not have a reasonable basis for denying the claim for benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Watchword Worldwide v. Erie Ins. Exch.,* A.3d 294, 303 (Pa. Super. 2024). "Even if a denial of coverage is erroneous, bad faith cannot be shown if the insurer denied coverage based on an interpretation of the policy language that is consistent with policy language and the law on the question is unclear." *Id.*

### c. Analysis

#### i. Contradictory Witnesses Preclude Summary Judgment.

As explained above, this Court will permit Mr. Owens to testify. He will testify that the damage to the Property was created by hail. The jury will be shown images of the damage to the Property. The Defendant denied coverage, claiming the damage was not caused by hail. Defendant will counter Plaintiff's evidence with the result of investigations made by its employees and reports made in the context of defending a litigation position by its impressive, paid, experts attributing the damages to allegedly uncovered sources.

7

As a result of this conflict, there is a clear issue of material fact as to what caused the damage to Plaintiffs' roof. It seems that the parties do not contest a significant thunderstorm which brought hail impacted the area of the Property on April 1, 2023. At any rate, this Court can take judicial notice of that fact upon consideration of published weather reports. See, e.g.: *Easy Sportswear, Inc. v. Am. Econ. Ins. Co.*, No. CIV.A. 05-01183, 2008 WL 2682689, at *1 (W.D. Pa. July 1, 2008).[4] A jury might see evidence of the hailstorm, images of the damage to the Property, hear from Mr. Owens, utilize their own life experience, and conclude that the damage was obviously caused by hail. Making all reasonable inferences in favor of the non-movant, a jury which has concluded that the damage is clearly hail damage could then reasonably infer with clear and convincing certainty that no reasonable inspections could conclude otherwise, and that the in-house contrary investigations and professional expert reports were self-motivated and aimed to justify a denial from the outset. This Court cannot resolve such a credibility determination at this stage. For that reason, alone, summary judgment must be denied.

This Court is not at all convinced by Defendant's citations to cases which it purports stand for the proposition that hail damage to other nearby properties cannot be relevant to this analysis. Each of these cases entirely inapplicable for the same exact reason. All five cases cited dealt with discovery motions, seeking to compel responses to or refute attempts to discover information about other bad faith claims against the defendant, presumably to try and establish a pattern of bad faith behavior. That is not the question here. While Plaintiffs may not be permitted to enter evidence of previous bad faith claims to establish a trend of bad faith, the fact that nearby houses had hail damage from that same storm is clearly probative of whether Defendant had a good faith basis to assert the damage was caused by an excluded source, rather than by the hailstorm.

---

[4] https://perma.cc/5SWX-CZXP ; https://perma.cc/K6NA-GYZW

## ii. Conflicting Language in Defendant's Denial Letter Also Precludes Summary Judgment.

The Court further denies summary judgment because of a potential contradiction or ambiguity with respect to the Denial Letter, the Policy, and the subsequent expert reports. In the Denial Letter, Defendant asserted that the damage identified was caused by "damages resulting from wear, tear, deterioration, **mechanical damage**, blisters, weathering, flaking, old damage unrelated to the date of the loss and the cause of the loss, lichen and moss." (Dkt. #38 at Ex. K) (emphasis added). This denial is not consistent with the Policy language. This discrepancy is known to the Defendant as that same Denial Letter cites to provisions of the Policy to justify not covering the damage by referring to "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or **mechanical breakdown**" as well as "wet or dry rot." (*Id.* (emphasis added)).

Read in a light most favorable to Plaintiff (the non-movant here), this is already problematic. The policy only excludes coverage for "**mechanical breakdown.**" **Mechanical breakdown**, understood in plain language, suggests something fairly narrow. Meriam-Webster defines mechanical to mean "of or relating to machinery; produced or operated by a machine or tool."[5] It defines breakdown as "failure to function."[6] Using the common definitions of these terms[7], it suggests that the Policy will not replace machinery which has broken down or perhaps will not cover damage caused by the impact of a machine breaking down. One might think of water damage from a broken dishwasher which drains improperly, for example.

---

[5] https://perma.cc/7C8A-9AYE

[6] https://perma.cc/5Z6Q-K6BL

[7] See: *Aleynikov v. Goldman Sachs Group, Inc.*, 765 F.3d 350, 360 (3d. Cir. 2014) (noting dictionary definitions are appropriate tools for contract interpretation).

The Denial Letter cites mechanical damage as the basis for denying coverage. Mechanical damage is not a basis for denial, according to the Policy. The definition of mechanical damage, sounds much broader than the mechanical breakdown preclusion provided for in the Policy. Understood in common terms, it might include any damage that in any way results from the operation of a machine.

Perhaps if the only use of "mechanical damage" was in that letter, and that phrase was left behind in litigation, this Court might possibly be convinced this conflict in language was not very probative of bad faith. But that is not the case. The potentially broad definition of "mechanical damage" discussed *supra* is stretched even further in Defendant's Expert Report of Walter M. Wysowaty (Dkt. #38 at Ex. N, the "Wysowaty Report").

The Wysowaty Report states, without any support, that mechanical damage "refers to damage caused by human activities." (*Id.*) The Wysowaty Report seems to at no point limit its definition to have anything to do with machinery at all, except by way of one of the examples it cites: rocks kicked up by a lawnmower. (*Id.*). But "mechanical damage," Mr. Wysowaty contends, would also include damage from ladders and children throwing balls. (*Id.*). While this Court does not presently have occasion to issue a conclusive ruling on whether a child's ball constitutes a "machine" capable of "mechanical damage" under this policy, it seems preposterous to conclude that it is.

A reasonable fact finder could find that Defendant attempted to conflate mechanical damage and mechanical breakdown as bad faith sleight-of-hand in an attempt to confuse its less sophisticated customers. And even if "mechanical damage" is indeed the correct terminology after all, this straining by Mr. Wysowaty and Defendant to turn children's toys into machines could easily lead to a strong inference of bad faith.

The question of whether mechanical breakdown or mechanical damage is the basis for the denial is an issue of material fact that would further thwart summary judgment. If the Defendant denied coverage based on an inapplicable term, or attempted to contrive different terminology into the Policy to provide an exception so broad that it could be stretched to deny coverage to almost anything, that would be further support for the bad faith claim.

### d. Conclusion

It may well be that, at trial, Defendant can set the record straight. Perhaps, the conflation of mechanical breakdown and mechanical damage will be easily explained as an industry term of art, or as an innocent and ultimately meaningless mistake. Perhaps another Policy provision will come and save the day. Perhaps all the damage will be shown to be from wear-and-tear, which appears to be properly excludable and is cited in the Denial Letter, rendering the entire discrepancy between mechanical damage and mechanical breakdown meaningless. Perhaps, Defendant's experts will shine, Mr. Owens will shrink, and a jury will have no problem finding- at least- that Defendant had a good faith basis to deny coverage

But that is not the current posture of this case. Plaintiffs have ample evidence from which a jury could infer bad faith, and Defendant's contradictory citations and baffling definitions similarly could lead to such an inference. Obligated to make all reasonable inferences in Plaintiffs' favor, Defendant's motion for summary judgment is denied. An appropriate order will be docketed separately.

Dated: February, 24, 2025                BY THE COURT:

                                         _____
                                         GAIL A. WEILHEIMER        J.